UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ADAM L. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-30182-MGM |
| | ) | |
| WILLIAM ZEITLER et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION FOR SUMMARY
DISMISSAL PURSUANT TO 28 U.S.C. § 1915(e)(2)(ii)
(Dkt. No. 11)

ROBERTSON, U.S.M.J.

I.  INTRODUCTION

Plaintiff Adam L. Hall ("Plaintiff"), an inmate at Okaloosa Correctional Institution in Crestview, Florida, proceeding *pro se*, has sued defendants William Zeitler, Eric Fox, Michael Fox, Joe Williams, Milo Campbell, Julio Lucido, Frank Briggs, Mark Dupois, Glen Sherman, John Pothel, Richard Barrier, Paul Caserno, Todd Thompson, Steve Lefevre, Fred Bates, and Afredo Channon (collectively, "Defendants") under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 – 1968.  Because Plaintiff is proceeding without prepayment of fees (Dkt. No. 7), his complaint is subject to review to determine if it satisfies the requirements of the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2).  For the reasons that follow, the undersigned recommends that Plaintiff's amended complaint[1] be dismissed without prejudice.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(1).

---

[1] The court ordered Plaintiff to amend his original complaint because it did not comply with basic pleading requirements pursuant to the Federal Rules of Civil Procedure (Dkt. No. 7).

1

II.      PLAINTIFF'S AMENDED COMPLAINT

Plaintiff alleges that all Defendants are members of the Warlocks – Hell's Angels Motorcycle Club of Berkshire County, Massachusetts ("the Club"). According to Plaintiff, he, too, was a member of the Club from 2004 until he was arrested in September 2011 (Dkt. No. 11 at ¶¶ 1, 7). Plaintiff alleges that, at the time of his arrest, various items of his personal property, which he values in excess of $150,000, were "in the care of" Defendants, including vehicles, a television, a grow machine, tools, and Club rings and jewelry (*id*. at ¶¶ 2-3). Plaintiff maintains that because he "was thought to have cooperated with law enforcement … [his personal property] was held away from him or his family …," rendering him unable to sell the property to obtain funds that he could have used to retain private legal representation and to pay a $6,000 property tax bill (*id*. at ¶¶ 3-5). As a result, Plaintiff contends that he had to rely on ineffective state-appointed counsel and was convicted and sentenced to prison, and he lost title to his property located at 40 East Main Road in Peru, Massachusetts (*id*.).

Plaintiff additionally alleges that he rendered services to the Club between 2004 and his arrest in 2011, including maintaining the "Clubhouse" property located at 530 Woodland Road in Lee, Massachusetts, selling tickets to and manning parties at the Clubhouse, and manning the Club booth at swap meets and other events (*id*. at ¶ 6). According to Plaintiff, through his work at parties and swap meets, he "generated hundreds of thousands of dollars each year for the Hell's Angels," but he has never been paid for his services (*id*. at ¶¶ 6-7). Plaintiff indicates that the value of his services are "to be estimated by the court by jury trial" (id. at ¶ 6).

The only cause of action Plaintiff identifies in his complaint is a violation of the Racketeer Influenced and Corrupt Organizations Act (*id*. at ¶¶ 21-22). Plaintiff claims that the Club, "working through its members did act as a corrupt organization in depriving the plaintiff

2

due to their belief that he cooperated with the police" (*id*. at ¶ 22). Plaintiff also vaguely claims to have "marked multiple statutes that have been violated by the defendants …" (*id*. at ¶ 21). While Plaintiff's reference is nebulous, the court surmises that Plaintiff is alluding to the various "Nature of Suit" boxes checked on the civil cover sheet that accompanied his original complaint, including: (1) "Contract" – "190 Other Contract;" (2) "Real Property" – "290 All Other Real Property;"[2] (3) "Torts," "Personal Property" – "370 Other Fraud" and "380 – Other Personal Property Damage;" (4) "Labor" – "790 Other Labor Litigation" and "791 Empl. Ret. Inc. Security Act;" and (5) "Other Statutes" – "430 Banks and Banking" and "470 Racketeer Influenced and Corrupt Organizations" (Dkt. 1-3). In his prayer for relief, Plaintiff asks the court to award him the "complete holdings" of Defendants, individually and through the Club, including the rights to the names and insignias of the Club, the Clubhouse property, and the individual Defendants' homes, businesses, and personal property (Dkt. No. 11 at ¶¶ 23 -34).

II. DISCUSSION

A. Plaintiff's Action is Subject To Screening

Because Plaintiff has sought to proceed without the prepayment of the filing fee, his complaint is subject to review to determine if it satisfies the requirements of the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2). This statute directs federal district courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious or frivolous, fails to state a claim upon which relief can be granted, or seeks monetary or other relief against a defendant who is immune from such relief. *See id.; see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In addition to the screening function under § 1915, this

---

[2] In conjunction with this selection, Plaintiff handwrote "loss of property due to breach of contract."

court has an independent obligation to inquire *sua sponte* into the question of its subject matter jurisdiction. *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). For purposes of the preliminary screening, the court liberally construes Plaintiff's complaint because he is self-represented. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000)).

    B. <u>Plaintiff Fails to State a Claim upon which Relief can be Granted under RICO</u>

    "RICO, the Racketeer Influenced and Corrupt Organizations Act, is a statute that Congress enacted as a tool in the federal government's 'war against organized crime,' to help combat 'enduring criminal conduct.'" *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 527 (1st Cir. 2015) (first quoting *United States v. Turkette*, 452 U.S. 576 (1981); and then quoting *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir. 1995)). Among other things, it prohibits "'any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,' from 'conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Neurontin Mktg. and Sales Practices Litig.*, 712 F.3d 21, 34 (1st Cir. 2013) (alterations in original) (quoting 18 U.S.C. § 1962(c)). While RICO "is primarily designed as a criminal statute, [it] also provides civil remedies—including treble damages and attorney's fees—to persons injured in their business or property by a prohibited act." *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 393 F.3d 36, 50 n.17 (1st Cir. 2004) (first citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985); and then citing 18 U.S.C § 1964(c)).

"To state a civil RICO claim, … a plaintiff must allege: '(1) conduct, (2) of an enterprise, (3) through … a pattern … of racketeering activity.'" *Home Orthopedics*, 781 F.3d at 528 (second omission in original) (quoting *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003)).  RICO's definitional section identifies the crimes that qualify as "racketeering activity," 18 U.S.C. § 1961(1), and provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity, … the last of which occurred within ten years … after the commission of a prior act of racketeering activity," 18 U.S.C. § 1961(5). "The Supreme Court has additionally required that 'the racketeering predicates [be] related, *and* that they amount to or pose a threat of continued criminal activity.'" *Home Orthopedics*, 781 F.3d at 528 (alteration in original) (quoting *Giuliano v. Fulton*, 399 F.3d 381, 386-87 (1st Cir. 2005)).  Further, the existence of a "causal relationship between the racketeering predicates and [the] asserted injury" to the plaintiff's business or property is a "crucial element of a successful RICO claim." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 46-47 (1st Cir. 1991) (citing *Sedima*, 473 U.S. at 497)).

Even reading the amended complaint liberally as the court must, Plaintiff fails to state a RICO claim.  First, Plaintiff does not plead any RICO predicates. *See* 18 U.S.C. § 1961(1) (enumerating crimes that can serve as RICO predicates). Plaintiff alleges only that Defendants deprived him of various items of his personal property and failed to pay him for services he rendered to the Club. "Ordinary theft offenses … are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). (Nor, of course, are civil claims for breach of contract, unjust enrichment, or conversion.)

Second, Plaintiff has not plead facts sufficient to meet the so-called "continuity" requirement for a "pattern of racketeering activity." Continuity for RICO purposes can be shown in one of two ways. *Home Orthopedics*, 781 F.3d at 528. "Under the 'closed' approach, a plaintiff would have to prove a 'closed period of repeated conduct' that 'amounted to … continued criminal activity.' Alternatively, under the 'open-ended' approach, a plaintiff could … show[] 'past conduct that by its nature projects into the future with a threat of repetition.'" *Id*. (first omission in original) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989)).

As to the former, "[b]ecause RICO was intended to attack 'long-term criminal conduct,' 'a closed-ended pattern sometimes can be established by examining only the number of alleged predicate acts and the duration of the alleged racketeering activity.'" *Id*. at 529 (quoting *Giuliano*, 399 F.3d at 387). "[B]oth the Supreme Court and [the First Circuit] have declined to spell out specifically how many predicate acts, or how long the racketeering has to endure, for a plaintiff to satisfactorily allege the pattern requirement," but they "have established some parameters" at either end of the spectrum. *Id*. On one end, "when a plaintiff has only alleged a few predicate acts (i.e. 'sporadic activity'), or when the acts span only a 'few weeks or months,' closed continuity cannot be established." *Id*. (first quoting *H.J.*, 492 U.S. at 239; and then quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 17-18 (1st Cir. 2000)). At the other end, "where the temporal duration of the alleged activity and the alleged number of predicate acts are so extensive that common sense compels a conclusion of continuity, closed-ended continuity should be found." *Id*. (quoting *Giuliano*, 399 F.3d at 387 (citation and quotations omitted)). Other "indicia of continuity" include "whether the defendants were involved in multiple schemes, as opposed to 'one scheme with a singular objective'; whether the scheme affected many people, or only a 'closed group of targeted victims'; and whether the scheme had

the potential to last indefinitely, instead of having a 'finite nature.'" *Id.* (quoting *Efron*, 223 F.3d at 18-19). "Where ... 'a closed-ended series of predicate acts ... constitute[s] a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities,' RICO liability cannot attach under a theory of a closed pattern of racketeering." *Id.* at 530 (quoting *Efron*, 223 F.3d at 19)). Plaintiff's claim is exactly that. Plaintiff alleges that Defendants deprived him of his property for the ostensible purpose of accomplishing the singular, narrow goal of retaliating against him based on their belief that he was cooperating with law enforcement. Accordingly, RICO liability cannot attach under a theory of a closed pattern of racketeering.

Plaintiff fares no better under the open-ended continuity analysis. Under that approach, continuity may be established "by showing a 'threat of' future criminal activity – that is, 'a realistic prospect of continuity over an open-ended period yet to come.' 'This approach necessitates a showing that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] ... are part of an ongoing entity's regular way of doing business.'" *Home Orthopedics*, 781 F.3d at 531 (alteration and omission in original) (quoting *Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 45 (1st Cir. 1991)). Here, the alleged deprivation of Plaintiff's property is complete. Defendants' alleged deprivation of Plaintiff's personal property does not include a threat of repetition over an open-ended period yet to come. Accordingly, open-ended continuity cannot be established.

Plaintiff does allege generally that Defendants have threatened him in prison and such threats presumably could continue into the future. Even if such threats realistically will extend into the future, however, they are unrelated to Plaintiff's claimed injury – that is, the alleged deprivation of his personal property. Because RICO requires a causal relationship between the

injury asserted and the predicate acts, the threats, even if continuing, cannot supply the requisite continuity for RICO purposes. *See Miranda,* 948 F.2d at 47). Stated another way, the alleged threats did not cause the deprivation of Plaintiff's personal property. Nor could Plaintiff successfully build a RICO claim by alleging that he has suffered personal injury as a result of the threats, because claims for personal injury, as opposed to injury to business or property, are not compensable under RICO. *Zareas v. Bared-San Martin*, 209 Fed. Appx. 1, 1 (1st Cir. 2006); *Bennet v. Centerpoint Bank*, 761 F. Supp. 908, 916 (D.N.H. 1991) (dismissing a civil RICO claim based on alleged threats to personal safety because fear for personal safety is not an injury to "business or property" as required under RICO).

Thus, due to the absence of any allegations of RICO predicate acts and failing under either continuity test, Plaintiff's amended complaint fails to state a claim upon which relief can be granted, and the court recommends that it be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii). In so recommending, the court acknowledges that "[s]*ua sponte* dismissals are strong medicine, and should be dispensed sparingly.'" *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (quoting *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 33 (1st Cir. 2001)). While the general rule is that *sua sponte* dismissals of complaints under Rule 12(b)(6) "are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond," *id*. (quoting *Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 13-14 (1st Cir. 1998)), there is a limited exception where "'it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile,'" i.e., if the "'allegations contained in the complaint, taken in the light most favorable to the plaintiff, are

patently meritless and beyond all hope of redemption.'"[3]  *Id*. (quoting *Gonzalez-Gonzalez*, 257 F.3d at 37).  The court is of the view that Plaintiff's RICO claim is patently meritless and beyond hope of redemption.  Moreover, because this is a recommended disposition, Plaintiff will have notice and will have 14 days to file specific written objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(1).

      C.      <u>No Diversity Jurisdiction Over Plaintiff's State Claims</u>

Absent a cognizable federal claim, any remaining possible state claims[4] are not properly before this court because diversity jurisdiction is absent under 28 U.S.C. §1332.  Diversity jurisdiction is established in cases where there is: (1) $75,000 in controversy and, (2) the civil action is between the citizens of different states.  *See* 28 U.S.C. § 1332(a)(1).  "Diversity jurisdiction exists only when there is *complete* diversity, that is, when no plaintiff is a citizen of the same state as any defendant."  *Gabriel v. Preble,* 396 F.3d 10, 13 (1st Cir. 2005).  Here, based upon the face of the complaint, plaintiff is a presumed Massachusetts citizen alleging claims against at least some other Massachusetts citizens.  "In cases involving prisoners, the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state."  *Hall v. Curran*, 599 F.3d 70, 71 (1st Cir. 2010).  While the presumption is rebuttable, *id*., it is evident from the face of his amended complaint that Plaintiff views his incarceration as transitory.  (Dkt. No. 11-1 at p.

---

[3] "These same standards apply to dismissals under § 1915(e) …."  *Brown v. Rhode Island*, 511 Fed. Appx. 4, 5 (1st Cir. 2013).

[4] As noted above, Plaintiff additionally referenced in his amended complaint having "marked multiple statutes that have been violated by the [D]efendants" (Dkt. No. 11 at ¶ 21).  Some of the "Nature of Suit" boxes Plaintiff checked on his civil cover sheet would or could be federal, including ERISA, "Other Labor Litigation," and "Banks and Banking."  However, Plaintiff's amended complaint is entirely devoid of any allegations stating such claims.  The other boxes Plaintiff checked, if properly alleged, would be state law claims, including claims brought under contract, tort, and property law.

1) ("I'm being held in Florida for now and I have no access to law library [sic] with Massachusetts civil caselaw or rules.  I'm being held without the state of Massachusetts due to threats by the named [D]efendants.")  Because the parties are not completely diverse, there is no diversity jurisdiction, and the Court is without jurisdiction on such claims.

D.  The Court Should Decline to Exercise Supplemental Jurisdiction.

Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction."  28 U.S.C. § 1367(c); see Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104 (1st Cir. 2004) (citing Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.")).  Here, the Court should decline to exercise supplemental jurisdiction over Plaintiff's possible state claims.

III. CONCLUSION

For the reasons set forth above, the court recommends that the case be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2).[1]

---

[1] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980).  See also Thomas v. Arn,

                                            /s/ Katherine A. Robertson  
                                            KATHERINE A. ROBERTSON  
                                            United States Magistrate Judge

DATED: May 12, 2016

---

474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.